| | |
|---|---|
| MOLLIE SLAYBAUGH and<br>MICHAEL SLAYBAUGH,<br><br>*Plaintiffs*,<br><br>v.<br><br>RUTHERFORD COUNTY,<br>TENNESSEE, RUTHERFORD COUNTY<br>SHERIFF'S DEPARTMENT, and<br>THE TOWN OF SMYRNA,<br>TENNESSEE,<br><br>*Defendants*. | Case No. _____<br><br>JURY DEMANDED |

# COMPLAINT

## I. INTRODUCTION

1. On January 24, 2022, the Defendants blew up the Plaintiffs' home.

2. In particular, dozens of law enforcement officials from the Rutherford County Sheriff's Department and the Smyrna Police Department shot dozens of cannisters of tear gas into Plaintiffs Mollie and Michael Slaybaugh's home—causing extensive damage—while apprehending someone who did not own the home and did not reside there.

3. Although the Defendants blew up Mr. and Mrs. Slaybaugh's home for public use, they refused to pay the Plaintiffs just—or any—compensation when asked.

4. Accordingly, this lawsuit seeks just compensation, under the United States and Tennessee Constitutions, for the Defendants' intentional destruction of the Plaintiffs' private property for public use.

## II. PARTIES

5. Plaintiffs Mollie and Michael Slaybaugh are residents of Rutherford County, Tennessee, and the owners of 1100 Odom Ct, Smyrna, TN. The Plaintiffs may be contacted through counsel.

6. Defendant Rutherford County is a county government in Tennessee. Rutherford County—and the Defendant Rutherford County Sheriff's Department, a Rutherford County law enforcement entity—may be served with process through their counsel and upon Joe Carr, Rutherford County Mayor, One S Public Square, Room 101, Murfreesboro, TN 37130.

7. Defendant Town of Smyrna is a municipal corporation in Smyrna, TN, that operates the Smyrna Police Department. It may be served through its agent or counsel.

## III. JURISDICTION AND VENUE

8. Plaintiffs bring this civil-rights lawsuit pursuant to the Fifth and Fourteenth Amendments to the United States Constitution; Article I, Section 21 of the Tennessee Constitution; and 42 U.S.C. § 1983.

9. Under *Knick v. Township of Scott*, 139 S. Ct. 2162, 2179 (2019), this claim is ripe, and Plaintiffs are not required to exhaust state remedies prior to filing this action.

10. This Court has original jurisdiction over the federal questions presented in this lawsuit under 28 U.S.C. § 1331 and supplemental jurisdiction over the Plaintiffs' state law claims under 28 U.S.C. § 1367.

11. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(1)–(2).

## IV. FACTS

12. On January 23, 2022, the Plaintiffs' son (who resided elsewhere) informed Mrs. Slaybaugh that he would like to visit with her at the Plaintiffs' home for a few days.

Mrs. Slaybaugh agreed.

13. After a brief encounter with her son, Mrs. Slaybaugh then left the residence for a work appointment and to go grocery shopping.

14. Later that evening, when preparing for bed, Mrs. Slaybaugh noticed two police units parked at her neighbor's house. Concerned for her neighbor's safety, she decided to check on her.

15. When Mrs. Slaybaugh opened her front door to check on her neighbor, she was met by an officer with a drawn gun. Another officer shined a flashlight on Ms. Slaybaugh and instructed her to come out of the house.

16. At this point, Mrs. Slaybaugh was able to observe approximately 25 police units outside of her home. Over a loudspeaker, an officer instructed her son to exit the property with his hands in the air.

17. Mrs. Slaybaugh, unaware of what was going on, asked officers if she could go back into her house and speak with her son, believing that she could convince him to exit the house and submit to law enforcement. Officers refused.

18. Officers told Mrs. Slaybaugh that her son was wanted for questioning in conjunction with a homicide. This was the first time Mrs. Slaybaugh had heard anything about her son's alleged involvement in such an incident.

19. After several hours, the Smyrna Police Department and Rutherford County Sheriff's Department left the house.

20. Mrs. Slaybaugh was not permitted to stay at her house by law enforcement, so she spent the night at her daughter's house nearby. Mr. Slaybaugh was at another property the Plaintiffs owned at the time.

21. The next morning, January 24, 2022, around 6:00 a.m., Mrs. Slaybaugh

observed through her Google Nest camera that law enforcement agents from the Rutherford County Sheriff's Department and the Smyrna Police Department were back at her home. Because her daughter's house was close by, Mrs. Slaybaugh and her daughter walked back toward the Plaintiffs' home.

22. Upon arriving at a road block set up by law enforcement, Mrs. Slaybaugh learned that a warrant had been obtained for her son's arrest. At this point, again, Mrs. Slaybaugh requested that she be given an opportunity to speak to her son, believing that she could convince him to exit the home. The officers refused.

23. Mrs. Slaybaugh was not under arrest, she had not been accused of any wrongdoing, and she was not the subject of the arrest warrant that law enforcement was attempting to execute. Nonetheless, she was not permitted to enter her own home.

24. Instead, law enforcement fired approximately 35 cannisters of tear gas into Plaintiffs' home, causing extensive damage to both the internal and external structure of the Plaintiffs' home and the contents inside.

25. The extensive damage the Defendants caused to the Plaintiffs' home required that it be taken down to the studs to repair the damage.

26. Cannisters of tear gas were lodged into the drywall, flooring was burnt, and nearly-new furniture was destroyed by the Defendants' intentional actions. *See generally* **Ex. 1** (photographs)**.** The entire house was in disarray, with windows broken, door frames destroyed, doors ripped off the frames, and glass and insulation scattered in several rooms. *Id.*

27. Because the Defendants blew up the Plaintiffs' home for public use, the Plaintiffs reasonably requested that they pay to fix the damage they caused. Rutherford County and the Rutherford County Sheriff's Department refused in writing. *See* **Ex. 2.**

- 4 -
Case 3:23-cv-00057    Document 1    Filed 01/20/23    Page 4 of 8 PageID #: 4

The Town of Smyrna also refused during a phone call.

28. As a result, the Plaintiffs have been forced to pay out of pocket to fix the damage the Defendants caused, which their home insurer also refused to pay on the ground that the damage was caused by order of a government authority. *See* **Ex. 3**.

29. To date, the Plaintiffs' uncompensated repairs have cost approximately $70,000.00. Repairs are not yet complete.

## V. CAUSES OF ACTION

### Count I: 42 U.S.C. § 1983; Fifth Amendment to the U.S. Constitution: Taking of Private Property without Just Compensation

30. The Plaintiffs incorporate and reallege the foregoing allegations as if fully set forth herein.

31. The Fifth Amendment to the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." *Id.*

32. This requirement has been incorporated against the states via the Fourteenth Amendment. *See Chicago Burlington and Quincy R.R. v. City of Chicago*, 166 U.S. 226 (1897).

33. The Just Compensation Clause does not only apply to government action that directly appropriates private property for public use; it also applies to government action that destroys private property for public use. *See Pumpelly v. Green Bay & Miss. Canal Co.*, 80 U.S. (13 Wall.) 166 (1871).

34. The Just Compensation Clause ensures that government does not force "some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *See Armstrong v. United States*, 364 U.S. 40, 49 (1960).

35. Apprehending an individual accused of perpetrating a homicide is in the

public interest, and destroying private property while doing so constitutes a taking for public use. Thus, the full cost of apprehending such an individual should be borne by the public, not innocent homeowners who attempted to assist law enforcement.

36. The Plaintiffs sought compensation from the Defendants, which the Defendants thereafter refused to provide.

37. This constitutional claim is brought under both 42 U.S.C. § 1983 and the Fifth Amendment itself, which is self-executing. *See Knick v. Township of Scott*, 139 S. Ct. 2162, 2171 (2019).

## **Count II: Article I, Section 21 of the Tennessee Constitution**

38. The Plaintiffs incorporate and reallege the foregoing allegations as if fully set forth herein.

39. Article I, Section 21 of the Tennessee Constitution provides "That no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor." *Id.*

40. A taking occurs under Article I, Section 21 when the governmental entity "performed a purposeful or intentional act for the public good that resulted in damage to a plaintiff's property or property rights." *See Branham v. Metro. Gov't of Nashville-Davidson Cnty., Tennessee*, No. M2015-00455-COA-R3-CV, 2016 WL 4566095, at *6 (Tenn. Ct. App. Aug. 30, 2016) (quoting *Edwards v. Hallsdale-Powell Util. Dist. Knox Cnty., Tenn.*, 115 S.W.3d 461, 466 (Tenn. 2003)).

41. In apprehending Plaintiffs' son, the Rutherford County Sheriff's Department and the Smyrna Police Department intentionally damaged Plaintiffs' property for a public good and use—apprehending a wanted individual—that resulted in

approximately $70,000 of as-yet-uncompensated damage to the Plaintiff's property.

## VI.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray:

1. That proper service issue and be served upon the Defendants, and that the Defendants be required to appear and answer this Complaint within the time required by law;

2. That the Court enter judgment that the Plaintiffs are entitled to just compensation for the damage that law enforcement caused to their property;

3. That the Court award the Plaintiffs all compensatory, consequential, and incidental damages to which Plaintiffs are entitled in an amount to be shown at trial in an amount not less than $70,000.00;

4. That pre-judgment and post-judgment interest be awarded to the Plaintiffs;

5. That the Court tax costs to the Defendants;

6. That the Plaintiffs be awarded their reasonable attorney's fees under 42 U.S.C. § 1988(b); and

7. That the Court award the Plaintiffs all further relief the Court deems proper.

Respectfully submitted,

/s/ Daniel A. Horwitz
DANIEL A. HORWITZ, BPR #032176
LINDSAY SMITH, BPR #035937
MELISSA K. DIX, BPR #038535
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
daniel@horwitz.law
lindsay@horwitz.law
melissa@horwitz.law
(615) 739-2888

*Counsel for Plaintiffs*